IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER MCNEARY, Father and Next Friend of L.M., a Minor; JACQUITA LEDLOW, Mother and Next Friend of L.M., a Minor; and L.M., a Minor and Student, <br><br> Plaintiffs, <br><br> v. <br><br> BARTLETT CITY BOARD OF EDUCATION and UHS OF LAKESIDE, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:23-cv-02501-SHM-atc |

**ORDER GRANTING DEFENDANT BARTLETT CITY BOARD OF EDUCATION'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR FALSE IMPRISONMENT**

Before the Court is Defendant Bartlett City Board of Education's ("Bartlett")[1] July 11, 2024 Motion to Dismiss Plaintiffs' False Imprisonment Claim. (ECF No. 33.) Plaintiffs have filed no response to this Motion, although they timely responded in opposition to Defendant Lakeside's Motion to Dismiss. See LR 12.1. (See ECF No. 38.)

To the extent Plaintiffs allege a false imprisonment claim against Bartlett, the Motion (ECF No. 33) is **GRANTED.**

---

[1] Plaintiffs originally sued Bartlett as "Bartlett City Schools." In its Motion, Bartlett represents that the entity being sued is the "Bartlett City Board of Education." (See ECF No. 33.) The case caption reflects the entity's proper name.

**I.   Background**

Plaintiffs filed their Complaint against Defendants on August 14, 2023. (ECF No. 1.) On May 30, 2024, the Court granted in part and denied in part Plaintiffs' Motion to Amend their Complaint. (ECF No 27.) The Court denied in part Plaintiffs' Motion to Amend because the Court determined that Bartlett could not be sued for Intentional Infliction of Emotional Distress (IIED). Bartlett retained immunity from that claim under the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-205. (See ECF No. 28.)

Plaintiffs filed their First Amended Complaint on June 12, 2024. (ECF No. 29.) Plaintiffs sue Bartlett for violation of Title IX of the Civil Rights Act, 20 U.S.C. § 1681(a); assault and battery; false imprisonment; and violation of the Open Records Act and Public Education Act, T.C.A. §§ 49-1-704, et seq. (See ECF No. 29.) Although Plaintiffs limit their false imprisonment claim to Lakeside in their prayer for relief, Bartlett has filed the present motion because Plaintiffs allege that "[a]ll named Defendants...worked hand in hand" to carry out the alleged false imprisonment. (See ECF No. 29 at 10.)

The facts relevant to Bartlett's Motion are alleged in Plaintiffs' First Amended Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). (ECF No. 29.)

On January 6, 2023, Ellendale School (a campus of the Bartlett City Board of Education) became aware that L.M., Christopher McNeary's nine-year-old daughter and a student at Ellendale, had harmed herself on the bus on the way to school. (See ECF No. 29 ¶¶ 8-13.) L.M. had been repeatedly bullied at school and "confided in a teacher at the school...that she had a razor blade in her phone case that she used to cut herself." (See id. ¶¶ 11, 25.) L.M. also told the school counselor that "she was unhappy, did not like herself...thought she was 'gay'...thought about harming herself, and she knew her grandmother owned a gun." (See id. ¶ 12.)

Ellendale called for someone to pick up L.M. (See id. ¶ 8.) When her aunt came to the school, the school counselor told the aunt that, because L.M. had harmed herself on the bus, L.M. would need paperwork showing that a mental health assessment had been completed before returning to school. (See id. ¶¶ 8-13.) The school counselor told L.M.'s aunt that Ellendale "had a 'school liaison' for this purpose [who] would like to speak to them," but the aunt declined. (Id. ¶ 13.)

On information and belief, Plaintiffs allege that the school liaison at Ellendale Elementary "is an actual paid employee of Lakeside Hospital," and that Lakeside "is paid per child that is admitted and has a financial incentive to get children referred to their facility, admitted and potentially hospitalized for

3

long periods of time." (Id. ¶ 31.) The school referred the family to Lakeside Hospital for L.M.'s mental health assessment. (See id. ¶ 15.)

The McNeary family took L.M. to Lakeside Hospital based on the school's referral. Plaintiffs allege that Lakeside falsely imprisoned their daughter at the Hospital and kept her in conditions of involuntary confinement that have caused her to suffer from "nightmares and flashbacks" and PTSD. (See id. ¶¶ 16-34, 47.)

L.M. returned to school on January 12, 2023. (See id. ¶ 23.) On her return, Plaintiffs allege that L.M.'s pre-existing bullying by another student, B.G., continued and that the school failed to protect L.M. (See id. ¶ 25.) B.G. confronted L.M., "verbally taunting" her and asking, "why she told on her." (See id.) Plaintiffs represent that B.G. is a "troubled student known to bully other children and use physical intimidation to accomplish these ends." (See id. ¶ 27.)

Ellendale School issued a ruling letter after investigating L.M.'s bullying and concluded that "the bullying complaint[s]... were not substantiated." (See id. ¶ 29.) Nevertheless, the school said that unspecified "behavioral interventions were being put in place." (See id. ¶ 29.) The interventions have not been successful, and L.M. has been approached in bathrooms by her bully, threatened for complaining about the bullying, called

"ugly," and "physically intimidated by the much larger B.G." (See id. ¶ 30.) Before the events at Lakeside, the bullying "took the form of name calling, commenting on the hair [and] appearance of the minor, L.M., as well as her sexuality." (See id.)

Ellendale told the family that it would keep B.G. away from L.M. during school hours. The family alleges Ellendale has failed to keep its word; that the two students remained in the same class and lined up together for lunch; that they appeared next to each other in the Fourth-Grade class picture; and that the school brought "both girls into an office meeting and declare[d] that 'now they were friends.'" (See id. ¶¶ 34-35.)

After Lakeside released L.M., the McNeary family took L.M. to a private therapist for treatment, in whose care she remains. (See id. ¶¶ 23, 34.) L.M. "suffers from PTSD based on her involuntary confinement at Lakeside, and the failure of the [school] administration to keep her safe from repeated contact" with her bully. (See id.)

## II. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a 'claim to relief that is plausible on its face.'" Kovalchuk v. City of Decherd, 95 F.4th 1035, 1037 (6th Cir. 2024) (quoting Bell Atl. Corp. v.

5

Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must provide sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011)).

The Court must "view the complaint in the light most favorable to [Plaintiff] as the nonmovant, accepting the complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in favor of [Plaintiff]." Zakora v. Chrisman, 44 F.4th 452, 464 (6th Cir. 2022). However, the Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." Com. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007).

### III. Argument

Bartlett argues that, under the TGTLA, Tennessee government entities are immune from negligence claims if the injury arises out of "civil rights." See Tenn. Code Ann. § 29-20-205(2). Bartlett contends that Plaintiffs' false imprisonment claim is based on an alleged injury to L.M.'s civil rights because the false imprisonment claim and the Title IX claim arise from the same facts. Bartlett argues that courts have interpreted the TGTLA's "civil rights" exception to encompass Title IX claims. (See ECF No. 33-1 at 6.)

6

Although Plaintiffs have not responded to Bartlett's Motion, Plaintiffs have conceded that their state and Title IX claims arise from the same facts. (See ECF No. 18, at 4 ("Plaintiffs confess that their state law claims rise out of related facts that support the federal claims.").)

IV. **Law**

Generally, the State of Tennessee cannot be sued unless authorized by the Tennessee General Assembly. Davidson v. Lewis Bros. Bakery, 227 S.W.3d 17, 19 (Tenn. 2007).[2] Courts will not conclude that the General Assembly waived Tennessee's sovereign immunity unless the statute at issue demonstrates that intent unambiguously. Id.

The "State of Tennessee" includes "the departments, commissions, boards, institutions and municipalities of the State." Id. (quoting Metro. Gov't of Nashville & Davidson Cnty. v. Allen, 415 S.W.2d 632, 635 (Tenn. 1967)). Public boards of education are considered Tennessee government entities. See Davidson, 227 S.W.3d at 19; see also Spearman v. Shelby Cnty. Bd. of Educ., 637 S.W.3d 719, 733 (Tenn. Ct. App. 2021) (noting that the "Shelby County Board of Education and Shelby County

---

[2] Because the Court exercises supplemental jurisdiction over Plaintiffs' false imprisonment claim, it applies Tennessee law. See Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").

Schools are clearly 'governmental entities' within the meaning of the [TGTLA]").

Section 29-20-205 of the TGTLA removes Tennessee government entities' immunity from suit for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment." Relevant here, government entities retain immunity from negligence claims if the underlying injury "arises out of...civil rights." See id. § 29-20-205(2). Courts have interpreted TGTLA's "civil rights" exception to include claims arising under Title IX of the Civil Rights Act.[3] When the state law claim arises from the same facts and circumstances as the federal civil rights claim, the TGTLA's civil rights exception to the waiver of immunity mandates dismissal of the state claim. See Partee v. City of Memphis, 449 Fed. Appx. 444, 448 (6th Cir. 2011). Courts have held that false imprisonment claims can arise out of "civil rights."[4]

---

[3] See, e.g., Doe by & through Doe v. Jackson Madison Cnty. Bd. of Educ., 2018 WL 2927777, at *4 (W.D. Tenn. June 7, 2018) (collecting cases); A.T. by & through B.G. v. Cleveland City Sch. Bd. of Educ., 2024 WL 4333685, at *23 (E.D. Tenn. Sept. 27, 2024). But see Doe v. Hamilton Cnty. Bd. of Educ., 329 F. Supp. 3d 543, 582 (E.D. Tenn. 2018).

[4] See, e.g., Campbell v. Anderson Cnty., 695 F. Supp. 2d 764, 777 (E.D. Tenn. 2010); Jackson v. Thomas, 2011 WL 1049804, at *7 (Tenn. Ct. App. Mar. 23, 2011). But see Brown v. City of Memphis, 440 F. Supp. 2d 868, 875 (W.D. Tenn. 2006).

8

**V.   Analysis**

As a public school board, the Bartlett City Board of Education is a Tennessee government entity and shares Tennessee's sovereign immunity. See Davidson, 227 S.W.3d at 19; Spearman, 637 S.W.3d at 733. Because Tennessee is immune from Plaintiffs' false imprisonment claim, Bartlett is as well.

Tennessee is immune from civil rights claims. § 29-20-205(2). Because Bartlett is a government entity that shares Tennessee's sovereign immunity, Bartlett is immune from Plaintiffs' false imprisonment claim, which arises out of a civil rights claim. See Partee, 449 Fed. Appx. at 448. Plaintiffs allege a violation of Title IX of the Civil Rights Act, a federal civil rights law. See supra note 3. Plaintiffs' false imprisonment claim arises from the same circumstances as their federal civil rights claim. Plaintiffs have admitted that it does. (See ECF No. 18, at 4.) Because Plaintiffs' false imprisonment claim arises out of civil rights, the TGLA's exception to the waiver applies and Bartlett is immune from this claim. See Partee, 449 Fed. Appx. at 448; supra note 3. (See ECF No. 18, at 4.)

Sovereign immunity precludes Plaintiffs from obtaining relief against Bartlett on this claim. To the extent Plaintiffs allege a false imprisonment claim against Bartlett, that claim must be dismissed for failure to state a claim on which relief

can be granted. See Partee, 449 Fed. Appx. at 448; Kovalchuk, 95 F.4th at 1037.

**VI. Conclusion**

Because Plaintiffs' false imprisonment claim arises under federal civil rights law and the TGTLA requires dismissal, Bartlett's Motion to Dismiss Plaintiffs' False Imprisonment Claim (ECF No. 33) is **GRANTED**. To the extent Plaintiffs allege a false imprisonment claim against Bartlett, it is **DISMISSED WITH PREJUDICE**.

SO ORDERED this _11th_ day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE