IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER MCNEARY, Father and Next Friend of L.M., a Minor; JACQUITA LEDLOW, Mother and Next Friend of L.M., a Minor; and L.M., a Minor and a Student, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:23-cv-02501-SHM-atc |
| BARTLETT CITY BOARD OF EDUCATION and UHS OF LAKESIDE, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING UHS OF LAKESIDE'S RENEWED MOTION TO DISMISS**

Plaintiffs sue Defendant UHS of Lakeside ("Lakeside") for assault and battery, false imprisonment, intentional infliction of emotional distress ("IIED"), and negligence and negligent supervision.

Before the Court is Lakeside's Renewed Motion to Dismiss (the "Renewed Motion"). (ECF No. 35.) Plaintiffs have responded (the "Response"). (ECF No. 38.) Lakeside invites the Court, inter alia, to revisit its Order Granting Plaintiffs' Motion to Amend Complaint ("Amendment Order"). (ECF No. 27.) Lakeside's Renewed Motion is **DENIED**.

I.   **Background**

Plaintiffs filed their Complaint against Defendants Lakeside and Bartlett City Board of Education ("Bartlett") on August 14, 2023. (ECF No. 1.) On May 30, 2024, the Court granted Plaintiffs' Motion to Amend. (ECF No 27.) Plaintiffs filed their First Amended Complaint on June 12, 2024. (See ECF No. 29.) The First Amended Complaint added claims of negligence and negligent supervision against Lakeside. On July 11, 2024, the Court denied Lakeside's first Motion to Dismiss (ECF No. 11) after determining that the First Amended Complaint mooted the pending motion. (See ECF No. 34.)

The facts relevant to the Renewed Motion are alleged in Plaintiffs' First Amended Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On January 6, 2023, Ellendale School, a campus of the Bartlett City Board of Education, became aware that L.M., Christopher McNeary's nine-year-old daughter and a student at Ellendale, had harmed herself on the bus on the way to school. (See ECF No. 29 ¶¶ 8-13.) L.M. had been repeatedly bullied at school and had cut herself with a razor blade that morning. (See id. ¶¶ 11, 25.) Ellendale called for someone to pick up L.M. from school. When her aunt came to the school, the school counselor told the aunt that L.M. would need paperwork showing that a mental health assessment had been completed before L.M.

could return to school. (See id. ¶¶ 8-13.) The school counselor told L.M.'s aunt that Ellendale "had a 'school liaison' for this purpose [who] would like to speak to them," but the aunt declined. (Id. ¶ 13.)

On information and belief, Plaintiffs allege the school liaison at Ellendale Elementary "is an actual paid employee of Lakeside Hospital" and that Lakeside "is paid per child that is admitted and has a financial incentive to get children referred to their facility, admitted and potentially hospitalized for long periods of time." (Id. ¶ 31.) The school referred the family to Lakeside Hospital for an assessment. (See id. ¶ 15.)

McNeary called Lakeside and spoke with a "Business Development Specialist" there who told McNeary that the "assessment was actually a doctor's visit" and that Lakeside would not be able to "complete an assessment because [the family's] insurance was like having TennCare." (See id. ¶ 16.) When the Business Development Specialist learned the family's insurance had been obtained through McNeary's employment, "immediately her tone changed" and she told McNeary to bring L.M. to Lakeside. (See id. ¶¶ 16-17.) At Lakeside, L.M. was assessed via ZOOM. (See id. ¶¶ 18-20.) After confirming the family's insurance benefits, Lakeside admitted L.M. to the Hospital "over the objections of the family members present." (See id.) L.M. was separated from her parents, and "her parents

3

were threatened with arrest if they did not leave the Lakeside premises." (See id.) Lakeside called the Bartlett Police Department, and the family was forced to leave around 1:30 a.m. (See id. ¶ 20.)

During her confinement, L.M. "was kept in a common room at first with children of all ages both male and female." (Id. ¶ 47.) Then she was placed in a room where "she was alone, and she could hear children crying and screaming late into the night in the facility." (Id.) L.M. "was unable to sleep during her confinement" and "did not change clothes for forty-eight (48) hours despite beginning to menstruate during her confinement." (Id.) These events have caused her to suffer from "nightmares and flashbacks" and PTSD. (See id. ¶¶ 34, 47.)

L.M. was held involuntarily and without parental consent from the evening of January 6, 2023, until the end of the day on January 9, 2023, the first time she had spent a night away from her family. (See id. ¶ 20-23.) McNeary called his insurance company to alert them that he had not authorized any treatment for his daughter at Lakeside, and repeatedly declined Lakeside's requests to medicate L.M. during her involuntary commitment. (See id. ¶ 22.)

After Lakeside released L.M., the McNeary family took L.M. to a private therapist for treatment, in whose care she remains. (See id. ¶¶ 23, 34.) She "suffers from PTSD based on her

involuntary confinement at Lakeside, and the failure of the [school] administration to keep her safe from repeated contact" with her bully. (See id.)

## II. Jurisdiction and Choice of Law

The Court has federal question jurisdiction based on Plaintiffs' Title IX claim against Bartlett. 28 U.S.C. § 1331. (See ECF No. 27 at 10.) The Court has supplemental jurisdiction over Plaintiffs' state law claims against Lakeside. See 28 U.S.C. § 1367(a). (See id. at 7-11 (analysis of the Court's jurisdiction over Plaintiff's claims finding that the state claims against Lakeside and the federal Title IX claim against Bartlett "derive from a common nucleus of fact").)

Because Plaintiffs' claims against Lakeside arise under Tennessee law and invoke the Court's supplemental jurisdiction, the Court applies the substantive law of the State of Tennessee to the extent it does not conflict with federal law. See Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th Cir. 1999).

## III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a 'claim to relief that is plausible on its face.'" Kovalchuk v. City of Decherd,

5

95 F.4th 1035, 1037 (6th Cir. 2024) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must provide sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011)).

The Court must "view the complaint in the light most favorable to [plaintiff] as the nonmovant, accepting the complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in favor of [plaintiff]." Zakora v. Chrisman, 44 F.4th 452, 464 (6th Cir. 2022). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Philadelphia Indem. Ins. Co. v. Youth Alive, Inc., 732 F.3d 645, 649 (6th Cir. 2013) (quoting Terry v. Tyson Farms, Inc., 604 F.3d 272, 275-76 (6th Cir. 2010)).

**IV. Analysis**

Lakeside argues that Plaintiffs' First Amended Complaint fails to state a claim on which relief can be granted. (See ECF No. 35 at 1.) Lakeside maintains that Plaintiffs' claims are governed by the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-101, et seq. Lakeside argues that Plaintiffs did not follow the mandatory procedures in § 29-26-

6

121 and § 29-26-122, and that their failure requires dismissal of Plaintiffs' claims. Lakeside argues alternatively that Plaintiffs' case fails because the First Amended Complaint does not allege sufficient facts to satisfy the elements of their claims, and that Lakeside followed all of the relevant statutory requirements when it hospitalized L.M.

### A. Applicability of the THCLA

Lakeside's first argument is that Plaintiffs were required to comply with the pre-suit certification and notice requirements of the THCLA although Plaintiffs brought their claims in federal court. (See ECF No. 35-1 at 3.) The Court addressed this issue in its Amendment Order. (See ECF No. 27.) Because the Sixth Circuit's decision in Albright v. Christensen, 24 F.4th 1039 (6th Cir. 2022), was first raised by the Court, Lakeside had not addressed it and has chosen to do so in its Renewed Motion. (See ECF No. 35-1 at 3-13.)

Albright held that a nearly identical Michigan statute's certificate-of-good-faith and notice provisions were procedural and superseded by the Federal Rules. See 24 F.4th at 1039. Therefore, the THCLA's certificate-of-good-faith and notice provisions are invalid in federal court. All of the District Court cases cited by Lakeside preceded Albright. (See ECF No. 35-1 at 5.) The District Courts deciding those cases did not

7

have the benefit of the Sixth Circuit's Albright opinion and were not bound by Albright.

Superseding the pre-Albright cases cited by Lakeside are those this Court cited in its Amendment Order and Plaintiffs cite in their Response. (See ECF No. 27 at 23-25, n. 6; ECF No. 38 at 5.) District Courts sitting in Tennessee are bound by Albright. (See id.) Lakeside's arguments that this Court should reverse itself, disagree with other Tennessee District Courts that have considered the issue post-Albright, and distinguish binding Sixth Circuit precedent are unpersuasive. Even if Albright were not strictly binding, the Court would be persuaded by Albright's reasoning to apply it to the nearly identical Tennessee statute at issue in this case.

The procedural notice and certification provisions of the THCLA conflict with federal law. Plaintiffs have complied with federal procedures. They are litigating their case in federal court, and their claims will not be dismissed for failure to comply with conflicting state procedural law.

    **B.   Failure to State a Claim**

Lakeside argues in the alternative that, even if Plaintiffs could proceed without complying with the THCLA, they would fail to state claims on which relief can be granted for assault and battery, IIED, and false imprisonment.

8

### 1.  **Assault and Battery**

Lakeside argues that Plaintiffs' First Amended Complaint "does not contain any factual allegations whatsoever to support their assault and battery claim." (ECF No. 35-1 at 15.) Lakeside does not elaborate or cite the legal standard for this claim under Tennessee law. Lakeside focuses instead on the IIED and false imprisonment claims. (See id.)

Plaintiffs dispute Lakeside's bare contention. They argue that "the tort of assault and battery" in Tennessee includes "willful and malicious injury," and that Plaintiffs need only show an act or omission that led to the harm alleged. (See ECF No. 38 at 6.) Based on the allegations in the First Amended Complaint, Plaintiffs argue that they have supported their assault and battery claims. Plaintiffs also fail to cite the elements of assault and battery under Tennessee law. (See id.)

"Under certain circumstances, psychiatrists and other health-care professionals or employees may be subject to liability for assault and battery." See *§ 26:2 Actions constituting tort*, 8 Am. L. Torts § 26:2 (Feb. 2024). The healthcare providers need not have the specific intent to harm the patient for the action to proceed, but the providers must intend to take a physical healthcare action that is not consented to or otherwise justified. See id. Plaintiffs allege that Lakeside's staff intentionally detained L.M. and exceeded both

9

the scope of consent and the law when Lakeside involuntary committed L.M. with threats of arrest. (See id.) The parties dispute whether the involuntary commitment was ultimately justified.

Absent any specific argument by Lakeside addressing the reasons Plaintiffs have failed to state a claim for assault and battery on which relief can be granted, the Renewed Motion to Dismiss that claim is **DENIED**.

### 2. Intentional Infliction of Emotional Distress

To state a claim for IIED in Tennessee, plaintiffs must allege facts that show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated in a civilized society; and (3) the defendant's conduct resulted in a serious mental injury to the plaintiff. See Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004) (citing Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997)).

Lakeside contends that the facts surrounding its involuntary commitment of L.M., as Lakeside presents them, and the way in which L.M. was treated cannot constitute IIED as a matter of law. However, the Court must analyze Lakeside's argument based on the facts as Plaintiffs allege them, not as Lakeside does. See Ashcroft, 556 U.S. at 678.

Plaintiffs' First Amended Complaint alleges that Lakeside: intentionally and forcibly kidnapped L.M., not to provide healthcare, but to profit from the family's insurance provider; used the police to keep the parents from their child; did not consider less traumatic courses of treatment; did not render any beneficial medical treatment; left L.M. locked up alone in a dark room for days, without adequate sanitary supplies or a change of clothes, to suffer in her own blood and hear the screams of fellow "patients"; and caused serious mental injury that persists because of this traumatic experience. (See ECF No. 29 ¶¶ 16-47.)

The events described may have occurred differently, but the Court accepts these specific and plausible factual allegations as true for purposes of analyzing the Renewed Motion to Dismiss. Plaintiffs have pled outrageous conduct. The case alleged "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" See Jenkins v. Nashville Public Radio, 2005 WL 3358871 at *4 (M.D. Tenn. 2005) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Lakeside's argument that it was providing appropriate medical care authorized by Tennessee law is not an appropriate determination for the Court at the motion-to-dismiss stage. The Renewed Motion to Dismiss Plaintiffs' IIED claim is **DENIED**.

11

### 3. False Imprisonment

Lakeside argues that Plaintiffs' false imprisonment claim should be dismissed because Lakeside has evidence that its involuntary commitment of L.M. complied with Tennessee law. Lakeside attaches exhibits to its Renewed Motion to Dismiss showing that two of its physicians completed certificates of need for involuntary admission, the General Sessions Court of Shelby County was notified, and Judge Betty Thomas Moore approved the involuntary commitment. (See ECF No. 35-1 at 18-19.) Lakeside asks the Court to dismiss the claim based on its exhibits. These considerations are more appropriate at summary judgment.

Plaintiffs do not argue that Lakeside failed to satisfy the legal requirements for involuntary commitment. Plaintiffs essentially allege that Lakeside did not meet the statutory requirements for commitment in good faith. When Lakeside discovered it could profit from the family's insurance, Lakeside moved forward with commitment and attempted to cover its tracks with false representations. That is the state of the record before the Court.

The Court decides a motion to dismiss on the facts alleged in plaintiffs' pleadings. If Lakeside has evidence to test the sufficiency of Plaintiffs' claims, that evidence is appropriately considered in a motion for summary judgment, not

12

a motion to dismiss. The Renewed Motion to Dismiss Plaintiffs' false imprisonment claim is **DENIED**.

**V.   Conclusion**

Plaintiffs brought this case in federal court. They need not comply with Tennessee procedural rules that conflict with federal rules. At this stage, the Court accepts the plausible factual allegations in Plaintiffs' First Amended Complaint, even if Defendant purports to provide exonerating evidence. Plaintiffs' claims against Lakeside may proceed. Lakeside's Renewed Motion to Dismiss (ECF No. 35) is **DENIED**.

SO ORDERED this _20th_ day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE